The TRAVELERS INDEMNITY COMPANY *v.* OLIVE'S SPORTING GOODS, INC., et al.

88-165                                                 764 S.W.2d 596

Supreme Court of Arkansas
Opinion delivered January 30, 1989

*McMillan, Turner & McCorkle*, for appellant.

*The McMath Law Firm, P.A.*, for appellees Warwick and Worthen Bank and Trust Company.

*Friday, Eldredge & Clark*, by: *William H. Sutton, Frederick S. Ursery, and James C. Baker, Jr.*, for appellees Olive's Sporting Goods, Inc., Tommie R. Olive individually and as administratrix of the estate of Robert J. Olive, deceased.

JOHN I. PURTLE, Justice. The Travelers Indemnity Company appeals from a declaratory judgment in favor of its insured, Olive's Sporting Goods, Inc. The circuit court adjudged gunshot injuries to several persons to be separate occurrences within the meaning of the policy issued by Travelers to Olive's. For reversal, the appellant argues that: (1) the court erred in finding there was more than one occurrence involved in the litigation; (2) the court erred in holding the contract of insurance ambiguous; and (3) the court erred in finding that the "products hazard" and "completed operations hazard" limits of the policy were not applicable. We agree with the appellant that there was only one "occurrence" with respect to the policy of insurance and that the aggregate coverage stated is the total sum for which Travelers may be liable under the circumstances of this case.

The trial court held that each injury inflicted by a gunman amounted to a separate occurrence under the insurance policy with Olive's. The Court of Appeals held that there was no justiciable controversy and dismissed the action. *Travelers Indem. Co. v. Olive's Sporting Goods, Inc.*, 25 Ark. App. 81, 753 S.W.2d 284 (1988). We granted review from the opinion of the Court of Appeals.

The appellee sold a Colt .45 pistol and a 12-gauge Smith and Wesson shotgun to a Wayne Crossley. These weapons were allegedly subsequently used by Crossley in a bizarre incident in which he shot a policeman, killed and wounded several other persons, and then committed suicide.

Several lawsuits have been filed against Olive's on behalf of the victims alleging negligence in the sale of the guns. In a separate action Olive's sued Travelers in a declaratory judgment proceeding to determine the amount of coverage under the terms of this policy of insurance.

Before reaching the appellant's arguments for reversal, we will discuss the specifics of a declaratory judgment action. The propriety of this action was argued before this court and was the basis of the opinion by the Court of Appeals. Our declaratory judgments statutes are found in Arkansas Code Annotated title 16, chapter 111, §§ 101-111 (1987). The purpose of the declaratory judgments law is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and

other legal relations." The law further provides that it is to be liberally construed and administered. Section 3 of the act gives the courts of record within their respective jurisdictions power to declare the rights, status, and other legal relations whether or not further relief is or could be claimed. The right to obtain a declaratory judgment is contained in § 104 and reads as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction, or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Olive's sought a determination of its rights under the contract of insurance with The Travelers Indemnity Company. The questions to be determined in this appeal are whether Olive's had coverage for each of the multiple injuries and the amount of the aggregate coverage for liability, regardless of the number of occurrences.

The declaratory judgment statute was first enacted in 1953, Act 274, and amended by Act 35 of 1957. One of the early cases interpreting this statute is *USF & G Co.* v. *Downs*, 230 Ark. 77, 320 S.W.2d 765 (1959). That case was factually similar to the present case with the exception that there were two insurance companies involved. *Downs* involved an automobile insurance policy. An injured party filed suit against Downs alleging that the driver of a truck that caused an automobile accident was an employee of Downs. Subsequently a dispute arose between Maryland Casualty Company and United States Fidelity and Guaranty Company as to which company's policy afforded primary coverage on the truck involved in the accident. The insurance companies then filed a declaratory judgment action in order to determine the obligations of the two insurance companies under their liability policies, and to determine which company was obligated to defend the suit. Although *Downs* was reversed on appeal and cross-appeal, it was held to be appropriate for a declaratory judgment proceeding by both the trial court and this court.

We again considered the matter of declaratory judgments with respect to liability insurance policies in *Equity Mutual Insurance Company* v. *Southern Ice Company*, 232 Ark. 41, 334 S.W.2d 688 (1960). This proceeding was brought to determine the rights of an insured under the terms of his insurance policy. That opinion contained language as follows:

> There are many cases in which declaratory judgment proceedings (under the Uniform Law) have been invoked by insurers in similar or analogous situations. [Citations omitted.] *The Equity Company had a right to use the declaratory judgment proceedings in this case to have determined its duty to pay/or defend*, just as was done in the cases previously cited. The Equity Company alleged, inter alia: (1) that the status of the Arnold boy made him an employee of The Borden Company; and (2) that the automobile insurance policy here involved specifically excluded employees. The factual issues required determination; and Equity Company was entitled to have the facts determined in the declaratory judgment proceedings. [Emphasis added.]

A more recent case on the subject is that of *Priddy* v. *Mayer Aviation, Inc.*, 260 Ark. 3, 537 S.W.2d 370 (1976), another insurance case involving liability coverage in an errors and omissions policy. Tort actions were filed against the policy holder. Again a declaratory judgment action. We affirmed the judgment of the trial court and in doing so quoted from Anderson on Declaratory Judgments, Second Ed., § 187:

> Since [the] purpose of the declaratory relief is to liquidate uncertainties and interpretations which might result in future litigation it may be maintained when these purposes may be subserved. The requisite precedent facts or conditions, which the courts generally hold must exist in order that declaratory relief may be obtained, may be summarized as follows: (1) There must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other

words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

In the present case we believe the facts clearly show that there exists a justiciable controversy in which the policy holder is vitally concerned with the number of "occurrences" and amount of his aggregate coverage. The insuror's and insured's interests are adverse, to some extent, under the present circumstances. Certainly Olive's has a legal interest in the controversy in as much as its own exposure to liability will be increased many times if there is a "single occurrence" limitation applied to the facts of this case. The matter is obviously ripe for judicial determination since several tort actions have already been filed against Olive's, and it seeks to determine the extent of its exposure beyond the limits of the policy. Therefore, the declaratory judgment action was proper. We do not consider the issue of Olive's negligence in making this sale. Neither do we consider the merits of the claims of any of the claimants.

The first argument for reversal is that the trial court erred in finding that there were multiple occurrences rather than a single occurrence. Obviously from the standpoint of Crossley's victims there was more than one occurrence; viewed from Olive's perspective there is only one occurrence — the sale of the weapons to Crossley.

In considering the different clauses of a contract, we must read the whole document together and determine whether all parts are in harmony. If possible we give effect to the overall meaning of the contract. It is error to give effect to one clause over another on the same subject if the two clauses are reconcilable. *Continential Casualty Co.* v. *Davidson,* 250 Ark. 35, 463 S.W.2d 652 (1971).

The contract between the parties attempted to define an "occurrence." The policy in part states:

> If a single limit of liability is stated . . . the limit stated in the declarations as applicable to "each occurrence" is the total limit of liability . . . for all damages . . . arising out of bodily injury . . . sustained by one or more persons . . . as a result of any one occurrence. Subject to the above

> provisions respecting each occurrence, the total liability of the Travelers for all damages because of bodily injury . . . described in any of the subparagraphs below shall not exceed the limit of liability stated in the declarations as "aggregate."

The policy also states:

> "Occurrence" means an accident including continuance [of] or repeated exposure to conditions which result in bodily injury neither expected nor intended from the standpoint of the insured . . . .

The policy declares that regardless of the number of persons injured or the number of claims made or suits brought on account of bodily injury, The Travelers' liability is limited as stated in the single limit of liability quoted above.

■ Although we have found no decision by this court construing such an "occurrence" provision in an insurance policy, there are decisions from other jurisdictions reaching contrasting results. We are persuaded that those jurisdictions adopting the "cause" theory (rather than the "effect" theory) hold the better view. To decide that each of the injuries required separate coverage under the policy would in effect put a no-limit policy into effect. We find the case of St. Paul Mercury Indemnity Company v. Rutland, 255 F.2d 689 (5th Cir. 1955), persuasive. In that case fourteen different parties claimed entitlement to the proceeds of a single policy as a result of a derailment of a train. The court held the single limit liability stated in the policy was the total limit of recovery. The same result was reached in Champion International Corporation v. Continental Company, 546 F.2d 502 (2d Cir. 1976), where 1400 sales of defective material were made. The court held that the multiple sales were continuous and repeated elements of the same occurrence. From the facts presented in the present case, and the terms of the policy, we hold that there was only one occurrence within the meaning of the insurance policy issued to Olive's.

■ The second argument by appellant is that the court erred in finding the contract ambiguous. When the contract of insurance is read in its entirety, it is clear that the appellant agreed to be bound for a total of $300,000 under the conditions

covered by the policy. The terms of the policy make it clear that the $300,000 limit is applicable either to one or several causes for which the insured is liable. See *Continental Casualty Company* v. *Davidson*, supra. We do not find the policy to be ambiguous.

■ The final argument for reversal is that the trial court erred in finding that the "products hazard" and "completed operations hazard" sections of the contract had no application. Although the terms used in the contract may not exactly fit the stereotypical conception of the "occurrences" resulting in this action, the words cannot be construed otherwise. The "products hazard" section, according to the policy, covers bodily injury arising out of the insured's products if the injury occurs away from the premises. "Completed operations hazard" includes bodily injury arising out of operations if the injury occurs after the operations have been completed and away from the insured's premises. Obviously if the insured is responsible for injuries under these circumstances, it is covered by one of these provisions of the policy. It is also clear that The Travelers intended to insure Olive's for liability under some circumstances. It makes no difference whether the intent was to cover them for claims resulting from "products hazards" and "completed operations hazards," or operations on the premises such as the sale of a product. The aggregate limit is stated both on the declaration page and in the products hazards and completed operations hazards clauses of the policy. The declaration sheet is partially reproduced below:

| General Liability—Section II | | |
|---|---|---|
| A  Bodily Injury Liability | | |
| B  Property Damage Liability | S. 300,000 | Each Occurrence |
| P  Personal Injury, Incidental Medical | | Aggregate |
| Malpractice, Advertising Injury | | |

■ To hold with the trial court in this case would cause the appellant to be responsible for up to $300,000 on every claim for which Olive's may eventually be found liable. Each eligible heir of those killed could have a separate claim with a limit of $300,000. The limits of the policy cannot be calculated under these circumstances. Even if we were to decide that the "products

hazards" provision does not apply, there is still the declaration sheet at the beginning of the policy where the total limit of liability under the policy is stated as $300,000. Therefore the aggregate limit in the policy is the amount stated on the declaration sheet — $300,000.

The case is reversed and remanded with directions to the trial court to enter declaratory judgment in accordance with the provisions of this opinion.

HICKMAN and NEWBERN, JJ., concur.

DARRELL HICKMAN, Justice, concurring. The court of appeals decided this case on a ground not raised by either party, i.e., that declaratory judgment was premature. Judge Corbin's concurring opinion concerned nonjoinder of parties, another matter not addressed in the briefs. Since Ark. Sup. Ct. R. 29(6) did not allow us to accept supplemental briefs on review, we were somewhat handicapped, as the parties were, in dealing with these issues. That rule was changed by a Per Curiam dated January 17, 1989.

I agree with the result in this case and write only to address the court of appeals' concurring opinion. Judge Corbin indicated that the failure to join those who had sustained injuries but had not yet filed suit against the insured was fatal to the action.

The controversy in this case is between the insurer and the insured over the amount of coverage. Any effect a declaratory judgment on that subject would have on these potential plaintiffs is so indirect that they should not be considered necessary parties in my opinion. There is not a consensus of opinion on whether those who have actually filed suit are necessary parties. *See* Annotation, *Declaratory Judgment — Parties*, 71 A.L.R.2d § 12 (1960); 26 C.J.S. *Declaratory Judgments* § 124 (1956).

NEWBERN, J., joins in the concurrence.