**FIREMAN'S FUND INSURANCE COMPANY, Plaintiff,**

v.

**SCOTTSDALE INSURANCE COMPANY, Edmondson Management, Inc., and TB of Helena, Inc., Defendants.**

**No. LR–C–96–225.**

United States District Court, E.D. Arkansas, Western Division.

June 26, 1997.

---

ORDER

ROY, Senior District Judge.

Before the Court is the unusual matter of two insurance companies arguing over money. More precisely, this is a declaratory judgment action filed by an excess insurer against the primary insurer and their insureds. The parties are in agreement that there are no material factual matters in dispute and have filed cross-motions for summary judgment asking for the Court's interpretation of the relevant insurance contract language.

The relevant facts and competing legal arguments in this case are fairly straightforward. Separate defendant TB of Helena, Inc. ("TBH") operates a Taco Bell franchise in West Helena, Arkansas, and is a subsidiary of separate defendant Edmondson Management, Inc.[1] Both TBH and Edmondson are named insureds under a commercial Comprehensive General Liability ("CGL") policy issued by separate defendant Scottsdale Insurance Company. Plaintiff Fireman's Fund Insurance Company provides excess liability coverage to TBH and Edmondson.

Currently, TBH is a named defendant in three lawsuits (one involving over a hundred plaintiffs) in Phillips County relating to the consumption of food prepared and sold by TBH allegedly tainted with the Hepatitis–A virus. It is not disputed that the aggregate settlement demand in those three cases exceeds one million dollars.

The applicable "Limits of Insurance" in Scottsdale's CGL policy (# CLS 044321) are as follows:

General Aggregate Limit (other than Products/Completed Operations) .............. $2,000,000
Products/Completed Operations Aggregate Limit ........... $1,000,000
Each Occurrence Limit ....... $1,000,000

There are two related legal disputes concerning these policy limits. The first is whether all of these alleged acts of food poisoning constituted only *one* "occurrence"

John S. Cherry, Jr., Scott Michael Strauss, Little Rock, AR, for Plaintiff.

Mike Huckabay, Little Rock, AR, W. Frank Morledge, Forrest City, AR, for Defendants.

---

1. Edmondson Management owns several Taco Bell franchises in east Arkansas and west Mississippi.

within the meaning of Scottsdale's policy language (Scottsdale's position) or whether each constituted a separate "occurrence" (Fireman Fund's position). If legally there was only a single occurrence, then Scottsdale's total exposure for non-Products/Completed Operations claims would be $1 million. However, if each were a separate occurrence, Scottsdale could be "on the hook" for as much as the $2 million General Aggregate Limit.

The second point of dispute is whether the sale of allegedly contaminated food for consumption "off premises" triggers the products/completed operations coverage of the CGL policy. As noted above, the policy has a separate $1 million limit for products/completed operations which is not subject to the $2 million General Aggregate Limit. It is Fireman's Fund's position that Scottsdale's policy provides additional coverage for food consumed outside the restaurant. Thus, an additional $1 million under Scottsdale's policy would be available to satisfy off-premises related claims before Fireman's Fund's policy would take effect.

*   *   *

Simply stated, this case is about where Scottsdale's coverage stops and where Fireman's Fund's begins. The two legal questions described above suggest three possible coverage possibilities. If Scottsdale prevails on both questions, its total coverage would be limited to $1 million. If Fireman's Fund prevails on both, Scottsdale's coverage would be $3 million. If Fireman's Fund prevails on either issue, but not both, Scottsdale's coverage would be $2 million.[2]

The Court finds that this declaratory judgment action is timely and ripe for adjudication. The two legal disputes mentioned above are resolved as follows:

### I. Are the alleged negligent acts one "occurrence" or more than one "occurrence?"

■ Scottsdale's policy, in "SECTION I—COVERAGES" provides, in part:

2. For example, if each act of selling tainted food were a separate "occurrence" under the policy (Issue I), but no distinction should be made between food purchased to be consumed on the premises and food purchased to be consumed off premises (Issue II), the limit under the policy would be $2 million.

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insurance Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that might result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) * * *

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. * * *

It is not disputed that the act(s) in question occurred, if at all, within the coverage area of the policy and during the policy period. Thus, the Court must determine whether what occurred was a single occurrence within the meaning of the policy language, or rather several occurrences.

In the DEFINITIONS section of the policy, the word "occurrence" is defined as follows:

> On the other hand, if all of the acts were but a single occurrence within the meaning of the policy but food consumed off premises is applicable to a separate part of the policy, then that also results in total coverage of $2 million.

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Apparently, there has only been one reported case decided by the Arkansas Supreme Court addressing the single/multiple occurrence issue, *Travelers Indemnity Co. v. Olive's Sporting Goods, Inc.,* 297 Ark. 516, 764 S.W.2d 596 (1989). In that case, a man purchased a pistol and a shotgun at a sporting goods store, shot several people (some fatally), then killed himself. "Several lawsuits [were] filed against Olive's on behalf of the victims alleging negligence in the sale of the guns. In a separate action Olive's sued Travelers in a declaratory judgment proceeding to determine the amount of coverage under the terms of th[e] policy of insurance." 764 S.W.2d at 597. Olive's position was that each shooting was a separate occurrence while Travelers maintained that the single sale of the weapons was the only occurrence within the meaning of the policy.

After examining the approaches taken by courts in other jurisdictions, the Supreme Court determined that the better view is one where the number of "occurrences" is related to what caused the accident, not the number of people affected by it.

> Although we have found no decision by this court construing such an "occurrence" provision in an insurance policy, there are decisions from other jurisdictions reaching contrasting results. We are persuaded that those jurisdictions adopting the "cause" theory (rather than the "effect" theory) hold the better view.

\* \* \*

From the facts presented in the present case, and the terms of the policy, we hold that there was only one occurrence within the meaning of the insurance policy issued to Olive's.

764 S.W.2d at 599. In other words, the "occurrence" was the sale of the guns by the insured's employee, not the shooting of the victims by the buyer.

Not surprisingly, each side in the present controversy claims that *Olive's Sporting Goods* is consistent with its view of how this case should be decided. They agree, as they must, that this Court is bound to examine the "cause" of the incident(s) to determine how many occurrences there were. However, they part company over what exactly that cause was.

Scottsdale, the primary insurer, essentially argues that the accident which caused the resulting injuries (allegedly) would have been the improper preparation and/or storage, handling, etc. of the food, that this should be regarded as having "occurred" once, and that therefore it is irrelevant how many customers actually were served the food, or more precisely, became ill after consuming the food. In other words, the focus should not be on the number of sales. Alternatively, they argue that the multiple sales were continuous and repeated elements of the same occurrence.

Fireman's Fund, on the other hand, argues that each sale was a separate occurrence within the meaning of the policy. It argues, and not without some legal authority, that improper handling, preparation, or storage of food, by itself, is not injurious to anyone (and thereby subjecting the insured to possible liability) unless and until it is served to the public. Since it is the sale which triggers potential liability, and that is why the business purchased insurance, every sale resulting in injury is a separate accident or "occurrence" under the terms of the policy.

In addition to the excellent briefs of the parties, the Court has carefully considered not only what *Olive's Sporting Goods* says but what the Court believes it does *not* say. The Supreme Court did *not* have before it a multiple sale case. Rather, it was considering a case involving a single sale (the guns) resulting in injuries to several people. The Supreme Court concluded that one should look to the cause of an event to determine the number of occurrences for insurance purposes and found that the single cause in that case, and therefore the only occurrence, was the sale of the guns.

The Supreme Court was deciding between a single cause and multiple effects and chose to focus on causes. It was *not* deciding (as this Court must) which of two types of causes

should be considered for the purposes of deciding what the occurrence was. In other words, the issue before this Court is whether the cause/occurrence was the allegedly negligent preparation/handling/storage of the food or instead was its sale. This was not the issue decided by the Supreme Court in *Olive's Sporting Goods;* therefore, the Court holds that *Olive's* is not directly on point and is not binding authority. Nevertheless, the Court looks to *Olive's* to predict how the Supreme Court would determine the first question before this Court today.

In *Olive's,* the Supreme Court cited with approval two cases which it found persuasive in reaching its decision on the "occurrence" question. One of them was *Champion International Corporation v. Continental Casualty Company,* 546 F.2d 502 (2nd Cir.1976), "where 1400 sales of defective material were made. The court held that the multiple sales were continuous and repeated elements of the same occurrence." *Olive's,* 764 S.W.2d at 599.

Given the Supreme Court's citation and apparent reliance on *Champion,* a case involving multiple sales found to be merely one occurrence, this Court concludes that Arkansas' Supreme Court would hold that in a case like the one at bar, multiple sales of contaminated food at a restaurant to several customers would nevertheless be one occurrence within the meaning of a standard CGL insurance contract. It should be noted, however, that if the factual evidence were to reveal that two or more wholly independent events occurred, each resulting in injury (such as food being contaminated by someone in August and someone else contaminating food in October), then more than one occurrence might be found.

Barring such a finding in the pending Phillips County actions, Issue I is resolved in favor of Scottsdale: the applicable Limit of Insurance in Scottsdale's CGL policy is $1 million for things "other than Products/Completed Operations."

## II. Does the sale of food for consumption off the premises trigger the products/completed operations coverage of the CGL policy?

■ Simply put, Fireman's fund has also argued that a distinction should be made for food purchased, then consumed off the premises (take-out food and/or food purchased at the drive-through window). It argues that the resulting injuries from food consumed off premises invokes the "products-completed operations hazard" portion of the CGL policy, which results in an additional $1 million in coverage by the primary insurer Scottsdale.

In the DEFINITIONS section of the policy, the term "Products-completed operations hazard" is defined as follows:

11a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

\*  \*  \*

Under SECTION III—LIMITS OF INSURANCE, the following language appears:

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. \* \* \*

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard," and

   c. \* \* \*

3. The Products–Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. \* \* \*

5. Subject to 2. or 3. above, *whichever applies,* the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. \* \* \*

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

Section III of policy (emphasis added).

After duly considering the competing opinions of what this language means, together with the cases the Court deems applicable, the Court hereby finds that the General Aggregate Limit (for other than Product/Completed Operations) and the Products–Completed Operations Aggregate Limit are not intended, at least in the present case, to both cover the same type of potential liability.

All of the plaintiffs in the underlying state court actions have alleged that they became ill after consuming food they purchased at Defendant TBH's restaurant which they contend was contaminated on account of TBH's employees. It makes no sense to suggest that the restaurant has one type of insurance to protect it from claims brought by folks who walk in, get their food, sit down at a table to eat it, and get sick a few days later, and another type of insurance for protection against the claims of those who walk in, get their food, take it outside to eat in their car or in their home, then get sick a few days later.

Language in Paragraph 5 of Section III suggests that both types of coverage will not apply to the same type of claim. "Subject to 2. [the paragraph addressing damages not included in the products-completed operations hazard coverage] or 3. [the paragraph addressing damages under the products-completed operations hazard coverage] above, *whichever applies*, the Each Occurrence Limit is the most we will pay for ... [d]amages...."

The Court holds that whether the state court plaintiffs' claims come under the products-completed operations hazard coverage or not, all the claims should be covered under the same type of coverage. No distinction will be made based on where they ate their food. Furthermore, given the Court's holding in Part I of this Order, the aggregate limit is the same under either part of the policy: $1 million. This renders moot the question of which of the two parts of the policy actually applies if, as here, the product in question is restaurant food.

\*     \*     \*

For the reasons set out above, the Court resolves both legal questions in favor of the primary insurer, Scottsdale Insurance: Scottsdale will only be responsible for the first $1 million. Scottsdale's motion for summary judgment is granted; Fireman's Fund's motion for summary judgment is denied.

IT IS SO ORDERED.