# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1943

_____

| | | |
|---|---|---|
| GeoVera Specialty Insurance Company, formerly known as USF&G Specialty Insurance Company, | * * * * | |
| | * | Appeal from the United States |
| Appellant, | * | District Court for the |
| | * | Eastern District of Arkansas. |
| v. | * | |
| | * | |
| Graham Rogers, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 13, 2011
Filed: April 13, 2011

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

GeoVera Specialty Insurance Co. ("GeoVera") appeals the district court's grant of summary judgment to Graham Rogers, Inc. ("Graham") on GeoVera's claims for breach of contract and negligence. We affirm the grant of summary judgment to Graham on GeoVera's negligence claim, but because we find that the agreement between GeoVera and Graham placed a duty on Graham to apply GeoVera's underwriting guidelines to all applications for insurance submitted by its retailers

under the terms of the contract, we reverse and remand for further proceedings on GeoVera's breach of contract claim.

## I.    BACKGROUND

GeoVera, an insurance company, and Graham, a wholesale insurance broker, entered into a Surplus Lines Broker Agreement ("Agreement") that went into effect on June 1, 2003. "Subject to the underwriting rules and regulations" of GeoVera, the Agreement authorized Graham "to market, present proposals of residential property insurance to [GeoVera] for its acceptance, and issue and deliver residential property insurance policies." By entering into the Agreement, GeoVera sought to tap into Graham's network of retail insurance agents. The Agreement obligated Graham to appoint retail agents ("retailers") to market GeoVera insurance policies. According to Graham Vice President Jerry Lesch, Graham was to receive payment equal to three percent of all premiums paid on policies produced by Graham's network of retailers.

GeoVera also maintained an electronic Residential Homeowner Quoting and Homeowner Insurance Processing System ("System"). The Agreement contemplated that the retailers appointed by Graham could submit applications to GeoVera by means of the System. Article III of the Agreement provided that "[GeoVera] will give [Graham], and retail producers appointed by [Graham] under this Agreement, access to the System for purposes of sending quote requests, receiving quotes, and printing and delivering quotes, applications, and binders." The Agreement also provided that, after "[Graham] and/or retail producers" complete an insurance application, "[t]he System will then provide a quote response to [Graham] *and* retail producer" (emphasis added). The System also would send "daily pre-formatted reports" to Graham.

On September 24, 2003, Graham entered into a retail producer agreement with insurance agent Jerry Reeves of East Central Arkansas Insurance ("ECA"). In 2004, Reeves submitted a homeowner's insurance policy application for the home of Gary

and Sherry Balentine. GeoVera accepted this application and issued the policy. In 2006, GeoVera cancelled the Balentines' policy because they failed to make a premium payment. Subsequently, the Balentines reapplied for insurance through Reeves, and GeoVera issued a new policy.

Soon after, the Balentines filed a claim with GeoVera for residential fire damage. During GeoVera's investigation of the claim, it discovered that the Balentines would not have qualified for coverage under GeoVera's underwriting guidelines. First, the insured residence was on six acres of land, while the application stated that it was on five acres or fewer. Insured lots may not exceed five acres under the GeoVera underwriting guidelines. Second, the Balentines had filed for bankruptcy in 2005, while the application stated that the Balentines had not filed for bankruptcy within the previous five years. An application listing a bankruptcy filing within the previous five years would have been denied automatically by the System, pursuant to GeoVera's underwriting guidelines. Moreover, the application was not signed by the Balentines. All applications must be signed under the GeoVera underwriting guidelines. After determining that the application's deficiencies could not be attributed to the Balentines, GeoVera paid the Balentines in excess of $780,000 on their claim.

GeoVera then brought claims against ECA and Reeves for negligence, breach of fiduciary duty, and constructive fraud. The parties settled these claims, and GeoVera released ECA and Reeves of liability. GeoVera also brought claims against Graham asserting, among others, breach of contract and negligence.[1] Both GeoVera and Graham moved for summary judgment. The district court denied GeoVera's motion and granted summary judgment to Graham on GeoVera's claims for breach

---

[1] GeoVera also brought claims for breach of fiduciary duty, negligent hiring, negligent supervision, and negligent training. The district court granted Graham's motion to dismiss these claims, and GeoVera does not appeal that order.

of contract and negligence. GeoVera then filed a motion for reconsideration, which the district court denied. This appeal followed.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1026 (8th Cir. 2010) (per curiam). Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1026-27.

### A. Breach of Contract

The district court concluded that there were "no issues for trial on GeoVera's claim that Graham Rogers 'directly' breached a duty under the [Agreement] to apply GeoVera's underwriting and rating guidelines" because "[t]he undisputed evidence shows that Graham Rogers had no part in completing the Balentines' application or submitting the application to GeoVera." GeoVera and Graham agree that Graham "had no part" in submitting the Balentines' application. GeoVera asserts, however, that the Agreement placed on Graham a duty "to make certain that only applications that complied with GeoVera's underwriting guidelines were submitted to GeoVera," including applications submitted by the retailers appointed by Graham. Graham responds by arguing that the Agreement does not create any obligation for Graham to apply the underwriting guidelines to applications submitted by the retailers or to supervise the retailers to ensure that they submitted only applications that satisfied the underwriting guidelines. Thus, our inquiry is well-defined: does the Agreement place a duty on Graham to apply GeoVera's underwriting guidelines to applications for insurance submitted by the retailers?

In this diversity case, the parties agree that interpretation of the Agreement is governed by Arkansas law. *See Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008). "When a contract is unambiguous, its construction is a question of law." *Artman v. Hoy*, 257 S.W.3d 864, 869 (Ark. 2007). The object of our inquiry "is to ascertain the intention of the parties." *RAD-Razorback Ltd. P'ship v. B.G. Coney Co.*, 713 S.W.2d 462, 465 (Ark. 1986). "Under Arkansas law, the language contained in the contract is the best evidence of the parties' intention." *Connect Commc'ns Corp. v. Sw. Bell Tel., L.P.*, 467 F.3d 703, 714 (8th Cir. 2006) (citing *First Nat'l Bank v. Griffin*, 832 S.W.2d 816, 818-19 (Ark. 1992)). We interpret the language contained in a contract using the "plain and ordinary meaning" of its words. *See Moore v. Columbia Mut. Cas. Ins. Co.*, 821 S.W.2d 59, 60 (Ark. Ct. App. 1991).

Applying these principles, we agree with GeoVera that the Agreement places a duty on Graham to apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those submitted by retailers appointed by Graham.

Under Article II, Section (B)(2) of the Agreement, Graham had the responsibility "[t]o *apply written underwriting and rating guidelines* prepared by [GeoVera] which have been provided to [Graham], and as may be revised by [GeoVera] from time to time, and *to deliver policies, provided the risk falls within the acceptable underwriting criteria*" (emphasis added). This provision unequivocally places a duty on Graham to apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement. While Graham argues that Section (B)(2) applies to applications submitted by Graham directly to GeoVera but does not apply to applications submitted by the retailers appointed by Graham, we find no language in the Agreement that limits Graham's duty to apply GeoVera's underwriting guidelines solely to applications submitted directly by Graham. In the absence of such language, we conclude that the most natural reading of this section requires that Graham apply GeoVera's underwriting

guidelines to all applications for insurance submitted under the terms of the Agreement, including those applications submitted by Graham's network of retailers, and deliver policies only when the risk falls within the acceptable underwriting criteria.

Furthermore, while Graham had the responsibility "[t]o appoint retail producers to market and solicit policies and to perform fieldwork," Article II, Section (B)(1) of the Agreement only authorized the retailers to "*aid* in the underwriting of the business" (emphasis added). We find the Agreement's use of the term "aid" to be significant. Looking to the plain and ordinary meaning, the dictionary definition of "aid" is "to help," "to provide with what is useful or necessary in achieving an end," and "to give assistance." Merriam Webster's Collegiate Dictionary 26 (11th ed. 2005). Section (B)(1)'s use of the term "aid" makes it clear that, while the retailers may help or assist Graham in applying the underwriting guidelines, Graham retained the ultimate duty to apply GeoVera's underwriting guidelines so that the risk to be insured fell "within the acceptable underwriting criteria."

Graham argues that the Agreement must be read as a whole and that, because the Agreement allowed the retailers to conduct business directly with GeoVera through the System, Graham had no duty to apply GeoVera's underwriting guidelines to applications for insurance submitted by the retailers. Graham cites Article III of the Agreement, which states that "[GeoVera] will give [Graham], and retail producers appointed by [Graham] under this Agreement, access to the System for purposes of sending quote requests, receiving quotes, and printing and delivering quotes, applications, and binders." In effect, Graham argues that Article III's provision of System access to the retailers is inconsistent with any duty established by Article II requiring Graham to apply GeoVera's underwriting guidelines to applications submitted by the retailers.

Arkansas law requires that, "[i]n considering the different clauses of a contract, [courts] must read the whole document together and determine whether all parts are in harmony." *Travelers Indem. Co. v. Olive's Sporting Goods, Inc.*, 764 S.W.2d 596, 599 (Ark. 1989). "[A] construction which neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions." *North v. Philliber*, 602 S.W.2d 643, 645 (Ark. 1980); *see also Travelers Indem. Co.*, 764 S.W.2d at 599 ("It is error to give effect to one clause over another . . . if the two clauses are reconcilable.").

Reading the Agreement as a whole, then, we agree with GeoVera that Article II and Article III can be construed to give effect to both provisions. There simply is no facial inconsistency between requiring Graham to apply GeoVera's underwriting guidelines and allowing the retailers direct access to GeoVera's System. Contrary to Graham's argument, granting System access to the retailers, in and of itself, does not mean that Graham could not have applied GeoVera's underwriting guidelines to applications submitted under the terms of the Agreement. Initially, Graham could have insisted that its retailers send an application for insurance to it for review and approval before submitting the application to GeoVera. Moreover, the Agreement makes clear that, after a retailer completes an insurance application, the System would provide a quote response to Graham *and* the retailer. This, in addition to the daily reports produced by the System and sent directly to Graham, would have put Graham on notice that one of its retailers was in the process of submitting an application. Graham then could have worked with its retailer to verify that the risk to be insured fell within GeoVera's underwriting criteria before the policy was issued. Therefore, we conclude that the Agreement placed a duty on Graham to apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those applications submitted by the retailers appointed by

Graham.  Accordingly, we reverse the district court's grant of summary judgment to Graham on GeoVera's breach of contract claim.[2]

### B.	Negligence

The district court also granted summary judgment to Graham on GeoVera's negligence claim because "GeoVera is unable to show that conduct on the part of Graham Rogers was the proximate cause of GeoVera's losses" and because no "agency relationship existed between Graham Rogers and ECA or Reeves."  On appeal, GeoVera argues that "[a]ny contract includes a duty to exercise reasonable care in the performance of the contract," and that Graham "fail[ed] to use reasonable care in submitting the [Balentines'] insurance application."  Therefore, according to GeoVera, "the contract obligated Graham Rogers to perform with reasonable care and failure of that performance gives rise to a negligence claim."

We recognize that, under Arkansas law, "although a plaintiff may not recover for the same act in both contract and tort and must ultimately choose among remedies sought, it is not wrong for concurrent allegations to be pursued." *Albright v. S. Farm Bureau Life Ins. Co.*, 940 S.W.2d 488, 490 (Ark. 1997).  However, we find GeoVera's limited arguments in support of its negligence claim unpersuasive.  First, GeoVera cites no Arkansas law, and we have found none, that recognizes an implied duty of reasonable care in the performance of a contract that gives rise to a negligence action.  Second, GeoVera's claim that Graham was negligent in failing to apply GeoVera's

---

[2] Graham also argues, inaccurately, that "GeoVera is seeking to impose liability upon Graham Rogers *solely* because of the conduct of ECA and Mr. Reeves" (emphasis added).  Therefore, Graham claims that GeoVera's breach of contract claim and negligence claim against Graham must fail because GeoVera's settlement and release of liability with ECA and Reeves amounts to a release of Graham.  Graham did not raise this argument before the district court, so we do not address it.  *See Pub. Water Supply Dist. No. 3 of Laclede Cnty., Mo. v. City of Lebanon*, 605 F.3d 511, 524 (8th Cir. 2010).

underwriting guidelines is one of nonfeasance, "which means not doing the thing at all, as distinguished from misfeasance, which means doing it improperly." *See Findley v. Time Ins. Co.*, 573 S.W.2d 908, 911 (Ark. 1978). Allegations of contractual nonfeasance do not give rise to claims for negligence in tort under Arkansas law. *See id.*; *see also Red Lobster Inns of Am., Inc. v. Lawyers Title Ins. Corp.*, 656 F.2d 381, 385 (8th Cir. 1981) (applying Arkansas law) ("[M]isfeasance . . . may support a cause of action in tort [while] nonfeasance or inaction . . . does not give rise to a cause of action in tort."); *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 237 S.W.3d 32, 40 (Ark. 2006) ("Arkansas has never recognized the tort of failure to act (nonfeasance) apart from the tort of bad faith.").

Therefore, we conclude that GeoVera's negligence claim fails as a matter of law, and that the district court properly granted summary judgment to Graham on this claim. *See Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156 (8th Cir. 2008) (noting that an appellate court may affirm on any basis supported by the record).

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to Graham on GeoVera's negligence claim. However, we reverse the district court's grant of summary judgment to Graham on GeoVera's breach of contract claim and remand for further proceedings not inconsistent with this opinion.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's holding that GeoVera's negligence claim fails as a matter of law. With respect to the majority's holding as to GeoVera's breach of contract claim, however, I respectfully dissent. In my view, the contract is at least

ambiguous, and as such, Arkansas law requires that we construe it against the drafter. *Byme, Inc. v. Ivy*, 241 S.W.3d 229, 236 (Ark. 2006).

I believe the contract is "fairly susceptible to more than one equally reasonable interpretation." *Roberts Contracting Co. v. Valentine-Wooten Rd. Pub. Facility Bd.*, 320 S.W.3d 1, 9 (Ark. App. 2009). As the majority observes, Article II, Section (B)(2) does not expressly limit Graham's responsibility to apply GeoVera's underwriting requirements to applications delivered by Graham. However, it also does not expressly require Graham to oversee the delivery of policies by appointed retail producers. In addition, Article III of the Agreement contemplates a direct relationship between the retail producers and GeoVera by permitting retail producers to deliver electronic applications directly to GeoVera. The absence of express language requiring supervision by Graham, coupled with the ability of retail producers to deliver policies directly, makes it reasonable to interpret the conditional clause in Article II, Section (B)(2) as applicable only when Graham is the party engaging in the delivery of policy applications.

Although I disagree with the majority's interpretation, its analysis is equally reasonable. Nonetheless, I believe our differing interpretations make the Agreement at least ambiguous as to whether Graham was required to supervise the delivery of policy applications by retail producers. Arkansas law thus dictates that we construe the Agreement against the drafter, GeoVera. *Byme, Inc.*, 241 S.W.3d at 236. Accordingly, I would affirm the district court's grant of summary judgment in favor of Graham.

_____